# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00497-CV

**Texas Department of State Health Services and David L. Lakey, M.D., Commissioner, Appellants**

**v.**

**Nancy Holmes, CLHRP, CME, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-GN-08-002178, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

We grant the appellants' motion for rehearing, withdraw our opinion and judgment issued May 15, 2009, and substitute the following in its place.

The Texas Department of State Health Services and its Commissioner, David Lakey, (collectively, "DSHS") bring this interlocutory appeal from the trial court's order denying its plea to the jurisdiction and granting a temporary injunction in favor of appellee Nancy Holmes, lifting the DSHS embargo on a laser device owned and operated by Holmes for the purpose of providing laser hair removal services. We affirm the trial court's order in part and reverse in part.[1]

---

[1] The parties' respective motions for leave to file supplemental briefing are hereby granted.

## BACKGROUND

On June 18, 2008, a DSHS representative inspected Holmes's laser hair removal business and made a determination that Holmes was using her laser device in a manner that violated the Texas Food, Drug, and Cosmetic Act. *See* Tex. Health & Safety Code Ann. §§ 431.001-.279 (West 2001 & Supp. 2008). As a result of this determination, DSHS issued Holmes a notice of detention, detaining her laser device on-site. Specifically, DSHS maintained that Holmes's use of the laser was not adequately supervised by a medical doctor because, among other things, she did not obtain a prescription or other written order from a physician for each patient on whom she performed laser hair removal.

Holmes filed suit, raising takings and due process claims and seeking declaratory and injunctive relief, including the release of her laser device. Holmes then obtained a temporary restraining order, enjoining DSHS from further inspecting her facilities and equipment or taking other enforcement action on the basis that a prescription is required for each patient undergoing laser hair removal. Six days later, the trial court held an evidentiary hearing on DSHS's plea to the jurisdiction and Holmes's motion for a temporary injunction. The trial court denied the plea to the jurisdiction, granted the temporary injunction in part, enjoining DSHS from disposing of, destroying, or selling the laser device, and abated the case to allow Holmes to exhaust her administrative remedies.

Holmes then requested modification of the temporary injunction. After a hearing, the trial court issued a modified temporary injunction, requiring that the embargo of the laser device be lifted and that Holmes be allowed to use the laser, subject to certain conditions regarding the

2

supervision of a medical doctor. Over DSHS's objection, the trial court did not require Holmes to obtain a prescription for each use of the laser device, requiring only "the level of supervision . . . that the medical director, in his discretion deems necessary for the performance of laser hair removal." The trial court further found that due process required that Holmes be given an administrative hearing, abating the case until administrative remedies had been exhausted. A hearing was held before the State Office of Administrative Hearings (SOAH) on August 4, 2008, in which DSHS requested that its case be dismissed with prejudice.[2] The administrative law judge granted the motion to dismiss, finding "that granting the Department's motion to dismiss with prejudice effectively provides an administrative hearing and due-process remedy to [Holmes] on the issue of the Department's detention of [Holmes's] products and exhausts all administrative remedies on that issue."[3]

DSHS then filed a notice of interlocutory appeal of the trial court's order denying the plea to the jurisdiction and granting the temporary injunction. On appeal, DSHS argues that the trial court erred in not requiring Holmes to obtain an order or prescription from a physician for each patient on whom she performs laser hair removal, that the temporary injunction was improper because Holmes did not make a showing that she would suffer irreparable harm, and that the

---

[2] DSHS also filed a motion to dismiss prior to the hearing.

[3] Holmes argues that the dismissal of the SOAH proceeding renders this appeal moot to the extent DSHS seeks to have the injunction dissolved. Because DSHS has not indicated that it would refrain from seeking to detain the device in the future based on Holmes's failure to obtain a written order from a physician prior to each use, we will review all of DSHS's issues on appeal, including those related to the propriety of the injunction.

trial court erred in denying DSHS's plea to the jurisdiction because there is no waiver of sovereign immunity in this case.

## STANDARD OF REVIEW

We review the grant or denial of a temporary injunction for an abuse of discretion. *See Walling v. Metcalfe*, 863 S.W.3d 56, 58 (Tex. 1993) ("The decision to grant or deny a temporary writ of injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion."). A trial court abuses its discretion when it acts arbitrarily, unreasonably, and without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). We may neither substitute our judgment for that of the trial court nor resolve the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). Rather, we review the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *See CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ).

In an appeal from a plea to the jurisdiction, we "review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). In reviewing a plea to the jurisdiction, we consider the pleadings and, when necessary to resolve the jurisdictional

4

issues raised, relevant evidence submitted by the parties. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

## DISCUSSION

*State and Federal Regulation of Laser Hair Removal Devices*

In its first and second issues on appeal, DSHS argues that in issuing the temporary injunction, the trial court erred by failing to require Holmes to obtain an order or prescription from a physician for each patient on whom she performs laser hair removal.[4] DSHS's argument is based on its contention that such an order or prescription is required by state and federal law. Holmes disagrees, stating that the applicable state and federal statutes only require a written order or prescription from a physician for a *sale* of the device, but not for subsequent use of the device in performing laser hair removal procedures. Both parties rely on their respective interpretations of the Texas Food, Drug, and Cosmetic Act, Tex. Health & Safety Code Ann. §§ 431.001-.279, and the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301-399a (West 1999 and Supp. 2008), neither of which expressly addresses this issue.

DSHS contends that the trial court improperly issued a temporary injunction allowing Holmes to continue violating the law. *See Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that trial court "abuses its discretion when

---

[4] In its first issue, DSHS argues that the trial court erred in deferring to the discretion of Holmes's medical director the decision whether to require authorization from a physician for each use of the laser device. In its second issue, DSHS argues that the trial court erred in issuing an injunction which allows "illegal behavior." Because both of these issues turn on the question of whether a written order or prescription from a physician is required for each use of the laser device, we will address them together.

it issues an injunction that orders an illegal act, even when done in the name of preserving the status quo"); *DeNoie v. Board of Regents of Univ. of Tex. Sys.*, 609 S.W.2d 601, 603 (Tex. Civ. App.—Austin 1980, no writ) ("Status quo can never be a course of conduct which is a prima facie violation of law."). However, the question of whether Holmes's use of the laser device is actually a violation of the law has not yet been resolved, and is in fact the contested issue in the underlying case. While illegal conduct cannot be justified as preservation of the status quo, "neither should conduct be adjudicated illegal based merely on pleadings and a brief, non-evidentiary TRO hearing when substantial rights are involved and the issues are far from clear." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). While the record in this case also includes an evidentiary hearing on the temporary injunction, the evidence presented at that hearing merely served to confirm that the state of the law on the level of physician supervision required for use of laser hair removal devices is unclear.[5] A trial court does not commit a clear abuse of discretion in issuing a temporary injunction where, as here, the question of whether the status quo constitutes illegal conduct "is the central question of the suit," and therefore "should be determined with a full trial on the merits." *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994, writ denied). Accordingly, we overrule DSHS's first and second issues on appeal and hold that the trial court did not commit a clear abuse of discretion in issuing the temporary injunction. We decline to address

---

[5] This evidence included testimony from Tom Brinck, the manager of DSHS's drugs and medical devices group, Dr. Steven Finder, a physician involved in laser hair removal, and Greg Absten, the director of a medical education group that runs training programs in laser application. Brinck took the position that state and federal law requires a prescription or other written order from a physician for each use of a laser hair removal device, while Finder and Absten testified that a prescription or written order is required only for the initial sale of the device.

the issue of whether a prescription or other written order from a physician is required for each laser hair removal procedure performed using the device at issue in this case, as the issue is not properly before us in this interlocutory appeal.

*Irreparable Harm*

In its third issue on appeal, DSHS contends that the trial court erred in granting the temporary injunction because Holmes failed to establish that she would suffer irreparable harm in the absence of an injunction. In order to obtain a temporary injunction, a party must plead and prove, among other things, that they will suffer irreparable harm if the status quo is not preserved pending trial on the merits. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* Irreparable harm for purposes of a temporary injunction may include noncompensable injuries such as a "company's loss of goodwill, clientele, marketing techniques, office stability and the like." *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding that party made sufficient showing of irreparable harm where company's credit history would be ruined unless injunction was granted). At the temporary injunction hearing, Holmes testified that she has had to cancel client appointments as a result of the embargo, leading some clients to indicate that they would no longer use her services. She further testified that without the use of the device, her credit history would be negatively affected because she would be unable to pay rent or make payments on the device, which she purchased on credit. Holmes also stated that if the embargo

remained in place, she would be forced to lay off employees and could potentially go out of business. Given this testimony, we cannot conclude that the trial court committed a clear abuse of discretion in finding that Holmes would suffer irreparable injury in the absence of a temporary injunction. DSHS's third issue is overruled.

*Plea to the Jurisdiction - Claims Against the Department*

Absent an express waiver of sovereign immunity, the State, its agencies, and its officials are generally immune from suit. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). In its fourth issue on appeal, DSHS claims that the trial court erred in denying its plea to the jurisdiction because the Department's sovereign immunity has not been waived.[6]

Sovereign immunity does not shield a governmental entity from a suit for equitable relief for a violation of constitutional rights. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited."); *see also* Tex. Const. art. 1, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."). DSHS contends that Holmes cannot take advantage of the sovereign immunity waiver for constitutional claims because she has failed to allege a valid constitutional claim.

---

[6] In discussing the plea to the jurisdiction, we will refer to the appellants separately as "the Department" and "the Commissioner." We will continue to refer to the appellants collectively, when necessary, as "DSHS."

A plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). However, when a plea to the jurisdiction challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227. "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227-28.

In her petition, Holmes brings both a takings claim and a due process claim in relation to the DSHS seizure of her property. DSHS contends that Holmes's constitutional claims are invalid because she did in fact receive due process. Rather than determining whether Holmes was deprived of due process in this case, the trial court exercised its discretion by deferring the resolution of the jurisdictional issue until the time of trial. *See id.* at 227 ("When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdiction determination should be made at a preliminary hearing or await a fuller development of the case . . . ."). In her petition, Holmes alleges that because DSHS did not provide her with any kind of pre-embargo notice and hearing or a prompt post-embargo notice and hearing, and because the Texas Food, Drug, and Cosmetic Act fails to provide for any such notices or hearings, she was unconstitutionally deprived of her property without

9

due process.[7]  Because these allegations create an adequate basis for a due process claim, we hold that the trial court did not err in denying the plea to the jurisdiction and deferring its determination of whether Holmes was unconstitutionally deprived of due process until the case could be more fully developed.

In addition to her constitutional claims, Holmes alleges in her petition that the Department exceeded its statutory authority under the health and safety code in seizing her laser device.  The issue of sovereign immunity in relation to these claims is controlled by the recent Texas Supreme Court decision of *City of El Paso v. Heinrich*, No. 06-0778, 2009 Tex. LEXIS 253 (Tex. May 1, 2009).  Under *Heinrich*, a plaintiff may not bring declaratory actions against governmental entities to determine their rights under a particular statute, but are limited to bringing ultra vires suits against officials in their official capacity.  *Id.* at *13.  On that basis, we reverse the trial court's order to the extent it denies the plea to the jurisdiction as to Holmes's statutory ultra vires claims against the Department.[8]  The trial court did not err, however, in denying the plea to the

---

[7]  While Holmes did receive a SOAH hearing on August 4, 2008, the hearing was scheduled after her petition was filed.  On appeal, Holmes maintains that the post-deprivation SOAH hearing was insufficient to satisfy due process.

[8]  Holmes argues that section 431.048 of the health and safety code expressly waives sovereign immunity to the extent a party seeks to regain the use of property detained or embargoed by DSHS.  *See* Tex. Health & Safety Code Ann. § 431.048(c) (West Supp. 2008) ("A person may not use a detained or embargoed article, remove a detained or embargoed article from the premises, or dispose of a detained or embargoed article by sale or otherwise without permission of the commissioner, the authorized agent, *or a court*.") (emphasis added).  However, sovereign immunity may only be waived "by clear and unambiguous language."  *Tooke v. City of Mexia*, 197 S.W.3d 325, 329 (Tex. 2006).  We do not find section 431.048(c) to rise to the level of "clear and unambiguous language" required by *Tooke* in order to waive sovereign immunity.  *See id.*

jurisdiction as to Holmes's constitutional claims against the Department. DSHS's fourth issue is therefore granted in part and overruled in part.

*Plea to the Jurisdiction - Claims against the Commissioner*

In its fifth issue on appeal, DSHS argues that the trial court had no jurisdiction over David Lakey in his official capacity as Commissioner of DSHS. Texas law is clear that private parties may seek declaratory relief against state officials who are acting pursuant to an allegedly unconstitutional law. *See Rylander v. Caldwell*, 23 S.W.3d 132, 136 (Tex. App.—Austin 2000, no pet.). Given that Holmes is seeking a declaration that the Texas Food, Drug, and Cosmetic Act "works an unconstitutional deprivation of property without due process," we hold that the trial court properly had jurisdiction over the Commissioner in his official capacity with respect to Holmes's constitutional claims.

Furthermore, Holmes's statutory ultra vires claims against the Commissioner are not barred by sovereign immunity. The Texas Supreme Court recently reiterated that ultra vires claims may be brought against governmental officials in their official capacities, as Holmes has done here. *Heinrich*, 2009 Tex. LEXIS 253, at *10-11. In order to bring this type of claim, a plaintiff is required only to "allege, and *ultimately* prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at *11 (emphasis added). In her petition, Holmes alleges that the Commissioner seized her laser device in an attempt to regulate her *use* of the device rather than the sale or labeling of the device, thereby exceeding his statutory authority under the health and safety code. *See* Tex. Health & Safety Code Ann. §§ 431.042 (authorizing Commissioner to inspect devices to determine whether they are adulterated or unfit to be sold), .048 (authorizing

11

Commissioner to detain devices that are adulterated or misbranded). Based on these allegations, Holmes sufficiently invoked the ultra vires exception to sovereign immunity described in *Heinrich*.

Accordingly, we hold that the trial court did not err in denying the plea to the jurisdiction in relation to Holmes's claims against the Commissioner. DSHS's fifth point of error is overruled.

## CONCLUSION

We reverse that portion of the trial court's order denying the plea to the jurisdiction as to Holmes's statutory ultra vires claims against the Department. We affirm the trial court's denial of the plea to the jurisdiction as to Holmes's claims against the Commissioner and her constitutional claims against the Department. We further affirm the trial court's order issuing the temporary injunction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in part; Reversed and Dismissed in part on Motion for Rehearing

Filed:   July 31, 2009